# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| GHANSHYAMBHAI PATEL and ALKABEN PATEL, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No.: ___-cv-_____ |
| v. | )<br>) JURY DEMAND |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPAY, | )<br>)<br>) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT WITH JURY DEMAND

COME NOW Plaintiffs, Ghanshyambhai Patel and Alkaben Patel (the "Patels"), individually and on behalf of all others similarly situated, and for their Class Action Complaint against Pennsylvania National Mutual Casualty Insurance Company ("Penn National") state and allege the following:

### PARTIES, RESIDENCY, JURISDICTION AND VENUE

1. The Patels are a married couple and are residents and citizens of Cookeville, Tennessee.

2. Defendant Penn National is a Pennsylvania corporation with its principal place of business in Harrisburg, Pennsylvania.

3. Penn National is authorized to and sells property insurance policies in various states across the country, including Alabama, Delaware, Maryland, South Carolina, Tennessee and Virginia.

4. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Penn National's, and the matter in controversy exceeds $5,000,000, exclusive or interest and costs.

5. This Court has personal jurisdiction over Penn National as Penn National has a branch and claims office in Nashville, Tennessee.

6. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Middle District of Tennessee. Venue is also proper pursuant to 28 U.S.C. §1391(c)(2) because Defendant is a corporation deemed to reside in this District.

**FACTS**

**A. The Property Insurance Policy and Casualty Loss**

7. Penn National is a regional insurer that sells property insurance coverage for, *inter alia*, homes, condos or commercial buildings in eleven states, specifically including Alabama, Delaware, Maryland, South Carolina, Tennessee and Virginia.

8. This lawsuit only concerns property coverage for buildings, and not personal contents, such as furniture and clothes.

9. The property insurance forms sold in Alabama, Delaware, Maryland, South Carolina, Tennessee and Virginia are materially identical as it relates to the contractual dispute set forth herein.

10. The laws in Alabama, Delaware, Maryland, South Carolina, Tennessee and Virginia are materially identical as it relates to the contractual dispute set forth herein, or at the least, any differences would be manageable in the class context. *See Steinberg v. Nationwide Mutual Insurance Co*., 224 F.R.D. 67, 76 (E.D.N.Y. 2004) (involving a 46-state putative class claiming breach of standard form insurance contracts). Specifically, these states are "replacement cost less depreciation" states for purposes of determining actual cash value under property insurance policies, or preclude the depreciation of labor in forms that do not expressly allow the same by court decision, statute or state administrative agency.

11. The Patels were insured pursuant to an insurance contract whereby Penn National agreed to insure, *inter alia,* the Patels' property located on the Insured Property (as defined below) against property damage, bearing Policy No. 559 0243000 (the "Patel Policy").

12. The Patels paid Penn National premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

13. The Patel Policy provided insurance coverage for direct physical loss to the dwelling and other structures located on the Insured Property, except as specifically excluded or limited by the Patel Policy.

14. On or about March 3, 2020, the Patels' house located at 180 Tara Drive, Cookeville, Tennessee (the "Insured Property") suffered damage covered by the Patel Policy.

15. The Patels timely notified Penn National of their loss and made a claim against the Patel Policy.

16. Penn National determined the loss to the Patels' property was covered by the terms of the Patel Policy.

17. Penn National calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then Penn National subtracts the estimated depreciation.

18. The Patel Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation as described below. In contrast with the Patel Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form." The Patel Policy does not contain a labor depreciation permissive form.

**B. Penn National's Calculation of the Patels' ACV Payment**

19. In adjusting the Patels' claim, Penn National affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payment. It did not use any other methodology to calculate the Patels' ACV payment.

20. Soon after the March 3, 2020 loss, Penn National sent an adjuster to inspect the damage to the Insured Property to estimate the ACV. Penn National uses commercially-available computer software to estimate RCV, depreciation, and ACV. The software used to calculate the payment to the Plaintiffs is called Xactimate®.

21. As set forth in a written Xactimate® estimate provided to the Patels by Penn National and dated March 13, 2020, Penn National's adjuster determined that the Patels had suffered a covered loss in the amount of $25,139.33 (the RCV) to their home. The estimate included the cost of materials and labor required to complete the repairs.

22. In a second written Xactimate® provided to the Patels by Penn National and dated May 8, 2020, Penn National's adjuster determined that the Patels had suffered a covered loss in

the amount of $33,310.57 (the new RCV) to his home. The second estimate included the cost of materials and labor required to complete the repairs.

23. In calculating its ACV payment obligations to the Patels in the first and second estimates, Penn National subtracted from the RCV estimate the $2,500.00 deductible provided for in the policy plus an additional amount ($7,329.16 and $8,442.85, respectively) for depreciation. This resulted in net ACV payments of $15,310.17 and $22,367.72, respectively, in the two Xactimate® estimates.

24. The Patels were underpaid on their ACV claim as more fully described below.

**C. Penn National's Practice Of Withholding Labor As Depreciation**

25. When it calculated the Patels' ACV benefits owed under the Patel Policy, Penn National withheld costs for both materials and the labor required to repair or replace the Patels' home as depreciation, even though labor does not depreciate in value over time. Penn National withheld labor costs throughout its ACV calculations as depreciation. Penn National also withheld labor costs as depreciation for other work necessary to repair and replace the Patels' property.

26. Like all property insurance claims estimating software, the specific commercial claims estimating software used by Penn National allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation option setting preferences.

27. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition immediately prior to the loss, as well as removal costs to remove damaged property, under commercial claims estimating software.

5

28. Penn National's withholding of labor costs as depreciation associated with the repair or replacement of the Patels' property resulted in the Patels receiving payment for their losses in an amount less than they were entitled to receive under the Patel Policy. Penn National breached its obligations under the Patel Policy by improperly withholding the cost of labor as depreciation.

29. Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue, as well as the electronic file associated with the estimate.

30. While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under the Penn National policy forms at issue in Alabama, Delaware, Maryland, South Carolina, Tennessee and Virginia when using a replacement cost less depreciation methodology.

31. Penn National's failure to pay the full cost of the labor necessary to return the Patels' structure back to its pre-loss condition left the Patels under-indemnified and underpaid for their loss.

32. Penn National materially breached its duty to indemnify the Patels by withholding labor costs associated with repairing or replacing the Patels' property in its ACV payment as depreciation, thereby paying the Patels less than they were entitled to receive under the terms of the Patel Policy, including but not limited to depriving the Patels of the timely use of their money resulting from the labor withholdings (even those calculated by Penn National itself) in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

33. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

34. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

35. The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

> All Penn National policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in Alabama, Delaware, Maryland, South Carolina, Tennessee and Virginia; and (2) for which Penn National itself accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and (3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law and arguments of counsel.
>
> In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.
>
> The class excludes any claims for which the applicable limits of insurance have been exhausted by initial actual cash value payments.
>
> The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements

expressly permitting the "depreciation" of "labor" within the text of the policy form, unless the use of those forms violate the law of the respective states at issue.

36. Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

37. Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

38. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically dispersed across Alabama, Delaware, Maryland, South Carolina, Tennessee and Virginia have been damaged by Penn National's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Penn National or from information readily available to Penn National.

39. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

40. Penn National has acted on grounds generally applicable to the proposed class in that Penn National has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Penn National will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

41. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether Penn National's policy language allows it to withhold labor costs in its calculation of ACV payments;

   b. Whether Penn National's policy language is ambiguous;

   c. Whether Penn National's withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

   d. Whether Penn National has a custom and practice of withholding labor costs in its calculation of ACV payments;

   e. Whether Plaintiffs and members of the proposed class have been damaged as a result of Penn National's withholding of labor costs in its calculation of ACV payments; and

   f. Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

42. Plaintiffs' claim is typical of the claims of the proposed class members, as they are all similarly affected by Penn National's custom and practice concerning the withholding of labor. Further, Plaintiffs' claims are typical of the claims of the proposed class members because Plaintiffs' claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

43. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interest does not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be a class representative.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

45. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of

the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

46. Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Penn National's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

47. Class certification is further warranted because Penn National has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

48. Plaintiffs may seek, in the alternative, certification of issues classes.

49. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

**COUNT I**
**BREACH OF CONTRACT**

50. Plaintiffs restate and incorporate by reference all preceding allegations.

11

51. Penn National entered into policies of insurance with the Patel Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Penn National and the Patels, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

52. The policies of insurance between Penn National, the Patels and the other members of the proposed class are binding contracts under Alabama, Delaware, Maryland, South Carolina, Tennessee and Virginia law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

53. Penn National drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss.

54. In order to receive or be eligible to receive ACV claim payments in the first instance, the Patels and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

55. Penn National breached its contractual duty to pay the Patels and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

56. Additionally, Penn National is in material breach of the Policy, and Penn National is liable to the Patels in the maximum amount allowed by the Patel Policy for the March 3, 2020 storm event that damaged the Insured Property and any other damage that is covered by the Policy, less the deductible and payments previously made. Specifically, Penn National breached the Patel Policy by failing and refusing to promptly pay the amounts individually owed to Patel as required by the terms of the Patel Policy and applicable law. As a result, the Patels have been damaged in

the amount of the unpaid portion of their claim, plus consequential damages arising from the delay in payment.

57. Penn National's actions in breaching its contractual obligations to Patel and members of the proposed class benefitted and continue to benefit Penn National. Likewise, Penn National's actions damaged and continue to damage Plaintiff and members of the proposed class.

58. Penn National's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

59. In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts Penn National unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

60. Plaintiffs restate and incorporate by reference all preceding allegations.

61. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

62. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

63. Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

64. Plaintiffs seek, individually and on behalf of the proposed class, a declaration that Penn National's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

65. Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

66. Plaintiffs and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

67. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiffs as the representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Penn National's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to the Patels and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against Penn National and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that Penn National specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6. Award compensatory damages to Plaintiffs for all amounts to which they are entitled pursuant to the Patel Policy as a result of the subject loss;

7. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

By: *s/ J. Brandon McWherter*
J. BRANDON McWHERTER - #21600
EMILY S. ALCORN #33281
MCWHERTER SCOTT BOBBITT PLC
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
(615) 354-1144
brandon@msb.law
emily@msb.law

ERIK D. PETERSON
(to be admitted *pro hac vice*)
MEHR, FAIRBANKS & PETERSON
 TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
(859) 225-3731
edp@austinmehr.com

T. JOSEPH SNODGRASS
(to be admitted *pro hac vice*)
LARSON • KING, LLP
30 East Seventh St., Suite 2800
St. Paul, MN 55101
(651) 312-6500
jsnodgrass@larsonking.com

*Attorneys for Plaintiffs and
Putative Class Representatives*